IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES PETRISHE, | ) | |
| NIKKI CAPUTO-PETRISHE, and | ) | |
| DIANNE MCGANN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10 C 7950 |
| | ) | |
| TODD TENISON, | ) | |
| SCOTT KIRK, and | ) | |
| VILLAGE OF OAK LAWN, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On April 11, 2013, Charles Petrishe ("Petrishe"), his wife, Nikki Caputo-Petrishe ("Caputo-Petrishe"), and his mother, Dianne McGann ("McGann") (collectively "Plaintiffs") filed with this court a Third Amended Complaint alleging civil rights violations under 42 U.S.C. § 1983 ("Section 1983"), as well as state law claims for battery, assault, malicious prosecution, intentional infliction of emotional distress, and abuse of process. (Dkt. No. 51 ("3d Am. Compl.").) The Third Amended Complaint generally alleges that Oak Lawn Police Officer Todd Tenison ("Officer Tenison") tasered Petrishe and Oak Lawn Police Officer Scott Kirk ("Officer Kirk") shot Petrishe multiple times on December 8, 2010. (*Id.* ¶¶ 8, 20-21, 23-26.) The Third Amended Complaint alleges that both officers seized Petrishe in an objectively unreasonable manner, both by acting without a lawful basis and by using excessive force, thus violating Petrishe's rights under the Fourth Amendment to the United States Constitution. (*Id.* ¶¶ 71-83.) Stemming from his own actions in this incident, Petrishe was charged with two counts of

1

attempted first-degree murder and was also prosecuted for the lesser included offense of misdemeanor aggravated assault, but was acquitted of all charges after a three-day bench trial. (*Id.* ¶¶ 61-62, 67-68.) Petrishe alleges that Officer Tenison and Officer Kirk conspired to, and did, deprive him of his right to due process under the Fourteenth Amendment of the United States Constitution when they engaged in efforts to suppress and destroy evidence which would have affected the decision to prosecute Petrishe for criminal charges relating to the incident. (*Id.* ¶¶ 89-97.)

Pending before this court is a "Motion to Dismiss Pursuant to Rule 12(b)(6)" filed by Officer Tenison, Officer Kirk, and the Village of Oak Lawn (collectively "Defendants"), (Dkt. No. 56 ("Defs.' Mot.")), seeking to dismiss Claim 4 and Claim 5 of the Third Amended Complaint, which allege violations of Petrishe's Fourteenth Amendment right to due process. Plaintiffs have filed their "Response to Motion to Dismiss," (Dkt. No. 59 ("Pls.' Resp.")), Defendants have filed their "Reply in Support of Motion to Dismiss Pursuant to Rule 12(b)(6)," (Dkt. No. 61 ("Defs.' Reply")), and the matter is now fully-briefed before the court.

## BACKGROUND

For purposes of this background section and evaluating the pending motion to dismiss, this court "presum[es] the truth of the facts alleged in [the] complaint" and "draw[s] all reasonable inferences" in favor of Plaintiffs. *Geinosky v. City of Chicago*, 675 F.3d 743, 746 (7th Cir. 2012).

On December 8, 2010, Petrishe was at home in Oak Lawn, Illinois, when he began arguing with Caputo-Petrishe. (3d Am. Compl. ¶¶ 8-9.) Soon after the argument began, Caputo-Petrishe called McGann and told her Petrishe was acting suicidal. (*Id.* ¶¶ 10-11.) McGann left work to come to Petrishe's home in an attempt to calm Petrishe down. (*Id.* ¶ 11.) Her

intervention was evidently not effective, as after her arrival "Petrishe took a kitchen knife and began cutting the back of his wrist." (*Id.* ¶ 12.) Caputo-Petrishe then "called the police department and informed them that Petrishe was acting suicidal." (*Id.* ¶ 14.) In response to this call, Officer Tenison and Officer Kirk arrived at the Petrishe home. (*Id.* ¶ 15.) Upon their arrival, Officer Tenison and Officer Kirk were informed by the dispatcher that Petrishe was armed. (*Id.* ¶ 18.) Officer Tenison and Officer Kirk walked past Caputo-Petrishe, who was in front of the house and on the phone with the police dispatcher, and entered the Petrishe home. (*Id.* ¶ 19.) Upon entering, Officer Tenison and Officer Kirk saw Petrishe standing approximately ten feet from them, with his arms at his side. (*Id.*) Officer Tenison shot Petrishe with a taser, knocking Petrishe to the ground. (*Id.* ¶¶ 20-21.) As he was still being tasered, "Petrishe got to his knees and lifted the knife in his right hand." (*Id.* ¶ 22.) Officer Kirk then shot Petrishe with a gun at least four times. (*Id.* ¶¶ 23-26.) Petrishe sustained serious injuries from the gunshots and was in the hospital for nearly four months while recovering. (*Id.* ¶¶ 26-27.) As a result of being shot and the injuries he received, Petrishe and his family have endured significant physical, emotional, and financial hardship. (*See generally id.* ¶¶ 27-52.)

Petrishe alleges that, in the aftermath of the shooting, Officer Tenison and Officer Kirk attempted to engage in a cover-up of their unlawful actions by "[m]aking false statements to state investigators," "[m]aking false statements in judicial proceedings," "[e]rasing, or causing to be erased 6 seconds from the taser video," "purposely failing to inventory exculpatory evidence in the form of numerous bullets and shell casings left behind," "[f]ailing to investigate potential exculpatory evidence by simply leaving the crime scene uninvestigated," "[m]isleading the prosecution as to the evidence against Petrishe," and "[w]ithholding potentially exculpatory evidence." (*Id.* ¶ 92.)

3

Petrishe alleges that this cover-up resulted in prosecutors "instituting and continuing charges against him." (*Id.* ¶ 93.) On December 19, 2010, Petrishe was charged with two counts of attempted first-degree murder. (*Id.* ¶ 61.) On January 7, 2011, Petrishe was indicted by a Cook County Grand Jury on two counts of attempted first-degree murder. (*Id.* ¶ 62.) After a three-day bench trial, Petrishe was found not guilty on both counts of attempted first-degree murder, as well as a lesser included offense of misdemeanor aggravated assault. (*Id.* ¶ 68.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the "sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The plaintiff's complaint need only give a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). In making this determination, this court must not credit "legal conclusions" nor "[t]hreadbare recitals of the elements of a cause of action." *Id.* Moreover a "plausible" claim is not merely one which is "conceivable" or creates a "suspicion [of] a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citations and internal quotation marks omitted). Instead, the "factual content" is plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As the Seventh Circuit has instructed, this involves pleading "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Evaluating a plaintiff's complaint by this standard is "a context-specific task

4

that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the Plaintiff has alleged a plausible set of facts, then the claim for relief "may proceed even if it strikes a . . . judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

ANALYSIS

I.      Due Process Claim under 42 U.S.C. § 1983 (Claim 4)

In Claim 4 of the Third Amended Complaint, Petrishe alleges that Officer Tenison and Officer Kirk "suppressed exculpatory evidence [that] would have prevented the prosecution from instituting and continuing charges against him." (3d Am. Compl. ¶ 93.) Petrishe argues that the suppression of exculpatory evidence by Officer Tenison and Officer Kirk violated his right to due process under the Fourteenth Amendment and that his injuries flowing from the violation are therefore redressable under Section 1983. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material"); *Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011) ("[P]olice officers can be held liable [in the context of a Section 1983 action] under *Brady* and its progeny when they withhold exculpatory evidence from prosecutors and the withholding of evidence is 'material.'"), *cert. denied*, 132 S. Ct. 593 (2011). For a plaintiff to show that his or her due process rights were violated under the reasoning of *Brady*, "the plaintiff must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material, that is, there was a reasonable probability that prejudice ensued." *Alexander v. McKinney*, 692 F.3d 553, 556 (7th Cir. 2012). The duty under *Brady* "extends to impeachment evidence as well as exculpatory evidence" and also to "evidence that is known only to police investigators and not to the prosecutor." *Youngblood v. West*

*Virginia*, 547 U.S. 867, 869-70 (2006) (per curiam) (internal quotation marks omitted); *see also Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001) (holding that police officers who withhold exculpatory information from prosecutors can be "[r]equire[ed] . . . to pay damages to the victims of their actions").

With respect to the third element of a *Brady* violation, prejudice exists where there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bielanski v. County of Kane*, 550 F.3d 632, 643-44 (7th Cir. 2008) (internal quotation marks omitted). The Seventh Circuit has expressed doubts that "an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation." *Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir. 2008); *see also Bielanski*, 550 F.3d at 644 (same). At the same time, however, the Seventh Circuit has also held open the possibility that a plaintiff might be able to state a due process claim after acquittal, "if . . . prompt disclosure of the suppressed evidence would have altered the prosecution's decision to proceed to trial." *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009). District courts have divided on the subject, as well. *Compare Lopez v. City of Chicago*, No. 06 C 6252, 2007 WL 3171332, at *3-4 (N.D. Ill. Oct. 24, 2007) (Der-Yeghiayan, J.) (finding no *Brady* violation where plaintiff was acquitted), *with Carrocia v. Anderson*, 249 F. Supp. 2d. 1016, 1024 (N.D. Ill. 2003) (Kennelly, J.) ("If exculpatory evidence was wrongly withheld, [plaintiff's] acquittal did not eliminate the due process violation that had already occurred by the time of the acquittal.").

When analyzing cases implicating this issue, the Seventh Circuit has confronted first the threshold issue of whether the alleged exculpatory evidence "would have altered the decision to go to trial." *Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010). "In other words, [the plaintiff] must show that if all parties had known of some piece of exculpatory evidence, the

6

prosecution would not have moved forward with charges, the grand jury would not have indicted [plaintiff], or the trial court would have granted a motion to dismiss the indictment." *Id.* Put another way, the suppressed evidence must have been such that it would "have caused the prosecution's entire case to unravel." *Carvajal*, 542 F.3d at 569. Because the Seventh Circuit has yet to find a case where this threshold question has been satisfied, it has reserved for a later day "the question of whether our circuit recognizes a claim for a *Brady* violation when the trial results in an acquittal." *Mosley*, 614 F.3d at 397-98; *see also Bielanski*, 550 F.3d at 644-45. Courts in this district have also adopted this approach, *see, e.g.*, *Phillips v. Allen*, 743 F. Supp. 2d. 931, 948 (N.D. Ill. 2010) (Dow, J.), and allowed suits pleading evidence meeting this standard to continue, reasoning that it would be improper to dismiss a suit where a *Brady* violation has not been definitively foreclosed. *See Armour v. Country Club Hills*, No. 11 C 5029, 2012 WL 4499050, at *5 (N.D. Ill. Sept. 27, 2012) (Gottschall, J.).

For the purposes of this motion to dismiss, therefore, this court will first examine the pleading in the Third Amended Complaint to establish whether Petrishe has sufficiently alleged the existence and suppression of exculpatory or impeaching evidence that would have altered the decision to go to trial. It is helpful to analyze the relevant allegations separately in this regard.

### A. Allegations of Untruthfulness by Officer Tenison and Officer Kirk

Petrishe alleges in his Third Amended Complaint that Officer Tenison and Officer Kirk made "false statements to state investigators," made "false statements in judicial proceedings," and "mislead[ ] the prosecution as to the evidence against Petrishe." (3d Am. Compl. ¶¶ 92.a., 92.b., 92.f.) Standing alone, however, these are not *Brady* violations. It is "established law that *Brady* does not extend so far as to provide relief in a situation where 'a police officer makes a false statement to a prosecutor.'" *Carvajal*, 542 F.3d at 567 (quoting *Harris v. Kuba*, 486 F.3d

7

1010, 1017 (7th Cir. 2007)). There is also no *Brady* violation where a police officer witness lies at trial, because the defense has the opportunity to demonstrate that the witness is lying and the jury evaluates the credibility of every witness. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("The Constitution does not require that police testify *truthfully*.") (emphasis in original); *see also Buie v. McAdory*, 341 F.3d 623, 625 (7th Cir. 2003) ("That a witness may give false or mistaken testimony therefore is not an independent constitutional violation. What the Constitution provides is assurance that evidence may be tested by cross-examination and by contrary proofs.") (internal citation omitted). Under controlling Seventh Circuit case law, "allegations that criminal proceedings were instituted against [a criminal defendant] based on false evidence or testimony" are considered, "in essence, [a claim] for malicious prosecution, rather than a due process violation." *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2010) (internal quotation marks omitted) (quoting *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003)); *see also Newsome*, 256 F.3d at 751 (no constitutional tort for malicious prosecution if there is an adequate state law remedy). The court therefore holds that Petrishe's *Brady* claim cannot be based on false statements that Officer Tenison and Officer Kirk made to state investigators and in judicial proceedings. Sub-paragraphs 92.a., 92.b., and 92.f. are therefore stricken from the Third Amended Complaint, and Defendants need not file an answer to these allegations.

      B.    <u>Allegations the Officer Tenison and Officer Kirk Erased, or Caused to Be Erased, Six Seconds of Taser Video</u>

Petrishe next alleges in his Third Amended Complaint that Officer Tenison and Officer Kirk "eras[ed], or caus[ed] to be erased 6 seconds from the taser video." (3d Am. Compl. ¶ 92.c.) It is difficult to know the value or alleged content of the missing six seconds of taser

8

video based solely on Petrishe's pleading; however, Plaintiffs expound slightly on what the video might have shown in their response to Defendants' motion:

> [The] case went to trial with the contention of Officers Kirk and Tennison [sic] that they had to shoot Petrishe because he threw a knife at them. It was a contention that was disputed as part of the defense case . . . . If the erased tape would have shown that Petrishe in fact did not throw the knife, the case may very well have never gone to trial.

(Pls.' Resp. ¶ 6.) Furthermore, the response concludes, "[i]f the taser video was in fact erased, and if those missing seconds in fact showed that Petrishe never threw a knife (as his witnesses contend, and in direct contradiction of what the Defendants contended in the criminal case) then the prosecutors may very well have spared Petrishe." (Pls.' Resp. ¶ 10.)

Though a plaintiff "may not amend his complaint in his response brief," *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*, 631 F.3d 436, 448 (7th Cir. 2011), a plaintiff may add facts in a response brief "in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001). Defendants have argued that the missing six seconds of taser video could not have been "exculpatory," because Plaintiffs admitted that Petrishe "got to his knees and lifted the knife in his right hand, as he was being tasered," before being shot by Officer Kirk. (3d Am. Compl. ¶ 22; *see also* Dkt. No. 56 ("Defs.' Mot") ¶ 4.) Viewing the allegations of the Third Amended Complaint in the light most favorable to Petrishe, as the court must do at this stage of the litigation, the court concludes that the allegation that Petrishe "lifted the knife in his right hand" is consistent with the additional fact set forth in Plaintiffs' response, that the missing six seconds of taser video would have shown that Petrishe "never threw a knife." (Pls.' Resp. ¶ 10.) The court therefore rejects the argument that Petrishe has pleaded himself out of court by alleging facts inconsistent with his due process claim.

9

In light of the fact that Petrishe was indicted and charged with the attempted first-degree murder of Officer Tenison and Officer Kirk, and considering the alleged circumstances of Petrishe's encounter with Officer Tenison and Officer Kirk, the court accepts for purposes of the pending motion that there is a reasonable probability the decision to go to trial would have been altered had Officer Tenison and Officer Kirk disclosed a video definitively showing that Petrishe did *not* throw a knife at them. *See* 720 ILCS 5/9-1(a) (elements of first degree murder); 720 ILCS 5/8-4(a) (elements of attempt). Although Petrishe may have difficulty actually proving the contents of the now-erased video, e.g., the existence of evidence favorable to the accused, the court finds that Petrishe has pleaded sufficient factual detail to put Defendants on notice of the factual basis for the claim pending against them and to plausibly suggest the existence and suppression of exculpatory or impeaching evidence that would have altered the decision to go to trial. *Compare Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013) ("in a world where public corruption" and "egregious abuse of one's official position" are not unknown, plaintiff's complaint for malicious prosecution "sets forth enough plausible detail to provide adequate notice to the defendants and thus to survive a 12(b)(6) motion to dismiss"). The court therefore denies Defendants' motion to dismiss Claim 4 insofar as this claim is based on Officer Tenison and Officer Kirk allegedly erasing six seconds of taser video.

      C.    <u>Allegations that Officer Tenison and Officer Kirk Failed to Inventory Exculpatory Evidence and Failed to Investigate the Crime Scene</u>

Petrishe also alleges that Officer Tenison and Officer Kirk "[p]urposely fail[ed] to inventory exculpatory evidence in the form of numerous bullets and shell casings left behind," "fail[ed] to investigate potentially exculpatory evidence by simply leaving the crime scene uninvestigated," and "with[held] potentially exculpatory evidence." (3d Am. Compl. ¶¶ 92.d., 92.e., 92.g.) As to the first allegation, Petrishe seems to have conflated the suppression of

10

evidence relating to his Section 1983 lawsuit with the suppression of evidence relating to his attempted first-degree murder charge. Clearly this court only imposes a *Brady* duty on the police and prosecutors as regards the latter. Without further elaboration on this point by the Third Amended Complaint or the response, it does not seem plausible to this court that firearms evidence would have any bearing on the prosecution's decision to bring charges for an alleged knife attack. *See Swanson*, 614 F.3d at 403 ("a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law") (emphases in original). It is important to remember that the standard set by the Seventh Circuit is evidence which would have caused "the prosecution's entire case to unravel." *Carvajal*, 542 F.3d at 569. The vague and general allegation in paragraph 92.d. that "numerous bullets and shell casings" at the scene of the shooting would have somehow been "exculpatory" is not sufficient to plausibly suggest that Defendants are liable under the *Carvajal* standard for a violation of Petrishe's right to due process.

Furthermore, the allegations in sub-paragraphs 92.e. and 92.g. are completely devoid of factual support. These conclusory statements allege only that further investigation would "potentially" have uncovered some type of "exculpatory evidence," and that additional "exculpatory evidence" was also withheld by Officer Tenison and Officer Kirk. These are mere recitations of the elements of a Section 1983 *Brady* claim and, therefore, are not credited by this court in evaluating the pending motion to dismiss. *See Iqbal*, 556 U.S. at 678. This court cannot guess what potential exculpatory evidence might have existed, and it will not require Officer Tenison or Officer Kirk do so either. Moreover, to the extent additional potentially exculpatory evidence did exist, *Brady* does not impose a duty on police or prosecutors to find or disclose

11

exculpatory evidence that they do not have in their possession. *See United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("The *Brady* rule does not apply to evidence not in the possession of the government that a defendant would have been able to discover himself through reasonable diligence."). Sub-paragraphs 92.d., 92.e., and 92.g. are therefore stricken from the Third Amended Complaint, and Defendants need not file an answer to these allegations.

II.     Conspiracy Claim Under 42 U.S.C. § 1983 (Claim 5)

Defendants next seek to dismiss Petrishe's Section 1983 conspiracy claim, arguing that Claim 5 is precluded by application of the intracorporate conspiracy doctrine. Specifically, Defendants note that the Third Amended Complaint explicitly alleges that, "[a]t all times relevant, [Officer Tenison and Officer Kirk] acted under color of law as . . . duly appointed Oak Lawn Police Officers and within the scope of their employment." (Defs.' Mot. ¶ 12 (quoting 3d Am. Compl. ¶ 6).) According to Defendants, because Officer Tenison and Officer Kirk are members of the same government entity—the Oak Lawn Police Department—who acted at all times within the scope of their employment, the intracorporate conspiracy doctrine precludes them from being liable under a theory of civil conspiracy.

The essential holding of the intracorporate conspiracy doctrine, as recognized by the Seventh Circuit, is that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory." *Payton v. Rush-Presbyterian St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999) (quoting *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994)). The doctrine is most commonly invoked in suits brought under 42 U.S.C. § 1985 where several managers confer on a business decision, such as an employee termination, later alleged to be discriminatory or retaliatory. *See, e.g.*, *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921

F.2d 108, 109-10 (7th Cir. 1990). The mere fact that several people "participated in the decision or in the act itself" does not turn a "single act" or decision by a "single business entity" into a conspiracy. *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972).

The doctrine has been expanded to include not just managers but all employees of a corporation, *Payton*, 184 F.3d at 633, as well as to cover conspiracies alleged against "members of a single government entity" analogous to a corporation. *See Wright*, 40 F.3d at 1508 (finding state government agencies "functionally the equivalent of corporations in that their employees and officials jointly endeavor to provide a product or service and reach decisions pursuant to a unified, hierarchical structure" and therefore covered by the doctrine).

The Seventh Circuit case which established the doctrine cautioned against an overly broad interpretation, stating "[w]e do not suggest that an agent's action within the scope of his authority will always avoid a conspiracy finding." *Dombrowski*, 459 F.2d at 196. The Seventh Circuit has subsequently recognized that exceptions apply, in particular, where "the nature of the discriminatory activity . . . require[s] that the doctrine be disregarded." *Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 4 F.3d 465, 470 (7th Cir. 1993). Although the Seventh Circuit not directly addressed the application of the intracorporate conspiracy doctrine in the context of § 1983 cases alleging police misconduct, several courts in this district have recognized that "[t]he argument for applying the doctrine in § 1983 cases involving egregious police misconduct is particularly weak." *Johnson v. Vill. of Maywood*, No. 12 C 3014, 2012 WL 5862756, at *3 (N.D. Ill. Nov. 19, 2012) (Dow, J.) (collecting cases). The alleged conduct in this case, the destruction of critical exculpatory evidence which resulted in a trumped-up charge of attempted first-degree murder, is not the "product of routine police department decision-making." *Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000) (Plunkett,

J.). Rather, this is a "classic charge of conspiracy" where "a number of officers took concerted action to work together to harm a single individual," bringing Defendants' alleged conduct outside the traditional scope of the intracorporate conspiracy doctrine. *Salto v. Mercado*, No. 96 C 7168, 1997 WL 222874, at *1 (N.D. Ill. Apr. 24, 1997) (Zagel, J.).

Furthermore, the Seventh Circuit has recognized an additional, overlapping exception where the action was motived "*solely* by personal [rather than corporate] bias." *Payton*, 184 F.3d at 633 n.9 (emphasis added) (alteration in original) (quoting *Hartman*, 4 F.3d at 470). As this court has stated before, testing for this exception requires inquiring if "the interests of the corporation played a part in defendants' actions." *Northen v. City of Chicago*, No. 93 C 7013, 1999 WL 342441, at *4 (N.D. Ill. May 17, 1999) (Holderman, J.). Assuming the truth of Petrishe's allegations and drawing all reasonable inferences in favor of Petrishe, as this court must when evaluating a motion to dismiss, the court concludes that Petrishe has plausibly alleged that Officer Tenison and Officer Kirk were not pursuing any lawful police business in accordance with the interests of the Village of Oak Lawn when they erased six seconds of the taser video to cover-up their unjustified shooting of Petrishe. Because at this stage of the proceedings the court finds that the intracorporate conspiracy doctrine is not applicable, Defendants' motion to dismiss Claim 5 is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Claim 4 and Claim 5 (Dkt. No. 56) is denied. The court agrees with Defendants, however, that certain allegations in the Third Amended Complaint cannot form the basis for Petrishe's *Brady* claim. Accordingly, sub-paragraphs 92.a., 92.b., 92.d., 92.e., 92.f., and 92.g. are stricken from the Third Amended Complaint, and Defendants need not file an answer to these allegations. Defendants' answer to

the remaining allegations in Claim 4 and Claim 5 is due on or before 10/22/13. The court's scheduling order of 3/14/13 [43], as amended on 9/25/13 [70], remains in effect. The parties are encouraged to discuss settlement.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Court Judge

Date: October 15, 2013